UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| AMR CORPORATION, *et al.*, | Case No. 11-15463 (SHL) |
| Reorganized Debtors. | (Confirmed) |

------------------------------------------------------------------x

| | |
|---|---|
| JOHN KRAKOWSKI, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. No. 14-01920 (SHL) |
| AMERICAN AIRLINES, INC., *et al.*, | |
| Defendants. | |

------------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

**JACOBSON PRESS & FIELDS P.C.**
*Counsel for Plaintiffs*
168 North Meramec Avenue, Suite 150
Clayton, Missouri 63105
By:    Allen P. Press, Esq.

**WEIL, GOTHSHAL & MANGES**
*Counsel for American Airlines, Inc.*
767 Fifth Avenue
New York, New York 10153
By:    Stephen Karotkin, Esq.
         Alfredo R. Perez, Esq.
         Stephen A. Youngman, Esq.

**MORGAN LEWIS & BOCKIUS LLP**
*Counsel for American Airlines, Inc.*
1111 Pennsylvania Avenue, N.W.
Washington D.C. 20004
By:    Jonathan C. Fritts, Esq.

**JAMES & HOFFMAN, P.C.**
*Counsel for the Allied Pilots Association*
1130 Connecticut Avenue, NW, Suite 950
Washington, DC 20036
By:   Edgar N. James, Esq.
      Steven K. Hoffman, Esq.
      Darin M. Dalmat, Esq.

**STEPTOE & JOHNSON LLP**
*Counsel for the Allied Pilots Association*
1330 Connecticut Avenue, NW
Washington, DC 20036
By:   Filiberto Agusti, Esq.
      Joshua R. Taylor, Esq.


**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the Defendants' motions to dismiss the amended complaint (the "Complaint") (ECF No. 1-9),[1] filed by Plaintiffs John Krakowski, Kevin Horner, and M. Alicia Sikes on behalf of themselves and all persons similarly situated against Defendants American Airlines, Inc. ("American") and the Allied Pilots Association (the "APA"), which is the pilots' union at American. The Plaintiffs are former Trans World Airlines ("TWA") pilots now employed by American.[2]

As part of American's bankruptcy restructuring, it sought and received authority to reject its then-existing collective bargaining agreement with the APA (the "Old CBA"). American subsequently negotiated a new collective bargaining agreement for its pilots (the "New CBA"). At the same time, American and the APA entered into a letter agreement to continue using the

---

[1]   Unless otherwise specified, references to the Case Management/Electronic Case Filing ("ECF") docket are to this adversary proceeding.

[2]   The Plaintiffs originally brought this action in the United States District Court for the Eastern District of Missouri. The Missouri District Court transferred the case to this Court on March 19, 2014. *See* Memorandum and Order, Case No. 4:13-cv-00838-JAR (ECF No. 43).

2

same pilot seniority list that had been utilized under the Old CBA.  In the three counts of their Complaint, the Plaintiffs allege that through the continued use of this seniority list: (1) American breached the terms of the New CBA, (2) the APA breached its duty of fair representation, and (3) American colluded in the APA's breach of that duty.

For the reasons set forth below, the Court agrees with the Defendants that the Plaintiffs have failed to state a claim for breach of the New CBA.  The Court therefore grants the Defendants' motions to dismiss Count I of the Complaint, as well as the claims within Counts II and III that depend upon the breach of contract claim.  The Court, however, denies the motions with respect to the remaining claims in Count II and III, finding that they sufficiently state a claim for a breach of the duty of fair representation and do not rely upon the breach of contract claim.  As to the final collusion claim, the Court finds that the Plaintiffs have failed to set forth facts sufficient to allege a plausible claim of collusion.

## BACKGROUND

As is the case with any motion to dismiss, the Court accepts the allegations of the Complaint as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In April 2001, American acquired the assets of TWA.  Compl. ¶ 8.  Shortly thereafter, American and the APA executed Supplement CC, which modified American's pilot seniority list to include the former TWA pilots, but stripped them of much of their seniority.  *Id*. ¶ 10.  Under Supplement CC, roughly half of the TWA pilots were moved to the bottom of the seniority list, while others were integrated into the list but retained a fraction of the seniority that they held at TWA.  *Id*. ¶¶ 11–12.

In November 2011, American filed for Chapter 11 protection.  *Id*. ¶ 14.  American subsequently obtained the Court's permission to abrogate the Old CBA under Section 1113 of

3

the Bankruptcy Code. *Id.* ¶ 15; *see also In re AMR Corp.*, 477 B.R. 384, 401 (Bankr. S.D.N.Y. 2012); *In re AMR Corp.*, 478 B.R. 599 (Bankr. S.D.N.Y. 2012). The Old CBA was void as of September 5, 2012. Compl. ¶ 16. As of September 5, 2012, all American pilots were technically at-will employees not subject to a valid collective bargaining agreement. *Id.* ¶ 17. American and the APA subsequently negotiated the New CBA, which became effective on January 1, 2013. *Id.* ¶ 18.[3]

The New CBA outlined how pilot seniority would be determined. *Id.* ¶¶ 21–24. It also expressly provided "that certain other rules in this Agreement stipulating specific methods and procedures of applying system seniority shall govern such application of system seniority only to the extent of the specific provisions of such rules." *See* New CBA Section 13(D). The New CBA included a letter of agreement numbered 12-05 ("LOA 12-05") that was entered into between American and the APA on January 1, 2013. *See* New CBA at LOA 12-05-1.[4] LOA 12-05 provided that "[American] and [the] APA agree that the TWA pilots' existing seniority placements on the Pilots' System Seniority List are final and shall continue pursuant to Section 13 of the CBA notwithstanding the termination of Supplement CC and any preferential flying rights associated with those seniority placements." *Id.* While the phrase "preferential flying rights" in Supplement CC is not relevant to the pending motions, these rights were described in a prior decision in a related case between these parties in this Court:

---

[3]   The New CBA is attached as Exhibit 1 to the Complaint. Compl. ¶ 18.

[4]   Section 26(A) of the New CBA provides that:

> Either party hereto may at any time propose, in writing, to the other party any amendment which it may desire to make to this Agreement, and if such amendment is agreed to by both parties hereto, such amendment shall be stated, in writing, signed by both parties and the amendment shall then be deemed to be incorporated in and shall become a part of this Agreement.

New CBA, Section 26-1. LOA-12-05, which is appended to the New CBA, is by its terms incorporated as part of the New CBA. *See* New CBA table of contents, listing numbered letters of agreement, including LOA 12-05.

> "To compensate for . . . loss of seniority, Supplement CC created a 'protective fence' in St Louis, creating minimum Captain and First Officer positions in St. Louis and granting the legacy TWA pilots preferential bidding for these positions. Thus, while reducing the seniority of legacy TWA pilots put them at a relative disadvantage for purposes of bidding against a much larger number of American pilots for positions on other routes, the protective fence guaranteed a certain number of desired positions on routes from St. Louis with bidding advantages for legacy TWA pilots."

*Krakowski v. American Airlines, Inc. (In re AMR Corp.)*, 2015 Bankr. LEXIS 1721, at *3–4 (Bankr. S.D.N.Y. May 19, 2015). In effect, American and the APA agreed to use the same seniority list that was utilized under the Old CBA and Supplement CC, which meant that the Plaintiffs and other former TWA pilots remained at a lower seniority level than their actual years of service. Compl. ¶ 28.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012, provides that a complaint must be dismissed if it fails to state a claim upon which relief can be granted. In analyzing a motion to dismiss under Rule 12(b)(6), a court looks to whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A court must proceed "on the assumption that all the allegations in the complaint are true." *Id*. at 555. Taken as true, these facts must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2007). "However, this does not mean that a claim must contain 'detailed factual allegations' to survive a Rule 12(b)(6) motion to dismiss." *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, No. 11-2589, 2012 WL 4474587, at *4 (S.D.N.Y. Sept. 28, 2012) (citing *Talley v. Brentwood Union Free Sch. Dist.,* 08 Civ. 790, 2009 WL 1797627, at *4 (E.D.N.Y. June 24, 2009)). Rather, the court must determine "whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010)

5

(citing *Iqbal,* 556 U.S. at 679).  The court must also draw all reasonable inferences in favor of the non-moving party.  *Ganino v. Citizens Utils. Co.,* 228 F. 3d 154, 161 (2d Cir. 2000).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir. 1985).  But the parties in this case have asked this Court to consider events and documents that go beyond the pleadings, including the New CBA.  As the New CBA is both cited in and attached to the Complaint as an exhibit, it can be considered.  *See Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The Defendants seek to rely upon a second document, which is an arbitration decision issued on March 12, 2014 by Richard I. Bloch, Esq. (the "Bloch Decision").  This arbitration decision addressed pilot grievances on the very same issues raised in the Complaint.  The Plaintiffs acknowledge the arbitration took place and address the merits of it in their opposition.  But while the Plaintiffs do not object to the Court taking judicial notice of the decision, the decision is not attached to or mentioned in the Complaint.  As such, the Court takes judicial notice only of the existence of the decision, but not of the truth of the facts contained within it.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the maters asserted in the other litigation, but rather to establish the fact of such litigation and related filings. . . . Hence, although the final determination . . . may be public records of which a court

6

may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.").[5]

## A. **Plaintiffs Fail to State a Claim that American Breached the New CBA**

In Count One of the Complaint, the Plaintiffs assert that the pilot seniority list currently used by American violates the terms of the New CBA. *See* Compl. ¶ 38 ("In breach of the New CBA, American has put forth a System Seniority List which does not accord Named Plaintiffs and members of the Class proper placement under the New CBA. . . .") Specifically, the Plaintiffs allege that the seniority level currently assigned by American to the former TWA pilots does not correspond to these pilots' "Occupational Date" and "Date of Hire," as those terms are defined by the New CBA and by American's practices. As a result, the Plaintiffs assert that they received a lower seniority placement than they should. But the Plaintiffs' claim is inconsistent with the plain language of the New CBA.

Courts apply traditional rules of contract interpretation to collective bargaining agreements, so long as the rules are consistent with federal labor policies. *Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 230 F.3d 569, 576 (2d Cir. 2000). "When provisions in the [collective bargaining agreement] are unambiguous, they must be given effect as written." *Id.* (citations omitted).

---

[5] The Plaintiffs complain that American has gone beyond the pleadings in arguing about the arbitration. *See* Plaintiffs' Opp. to American MTD, at 4 n.1 [ECF No. 16]. The Plaintiffs request that they also be allowed to go beyond the pleadings in responding to American's argument by submitting the Declaration of Ben Thompson, one of the aggrieved pilots involved in the arbitration. *See id.* Mr. Thompson's Declaration discusses the experiences of both himself and Theodore Case—a similarly situated pilot—during the grievance process with American. *See* Thompson Decl., attached as Exh. 1 to the Plaintiffs' Opp. to American MTD. But the Court cannot consider such evidence on a motion to dismiss. *See Sharette v. Credit Suisse Int'l*, 2015 U.S. Dist. LEXIS 111966, at *25 (S.D.N.Y. August 20, 2015) ("The task of a court in ruling on a motion to dismiss is to 'assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'") (quoting *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005)). In any event, Plaintiffs' request to submit the Thompson Declaration to rebut American's arguments is moot as the Court declines to consider the facts set forth in the Bloch Decision.

"Only when provisions are ambiguous may courts look to extrinsic factors – such as bargaining history, past practices, and other provisions in the [collective bargaining agreement] – to interpret the language in question." *Id.* Additionally, courts should attempt to read collective bargaining agreements in such a way that no language is rendered superfluous. *Id.*

Pilot seniority is generally addressed under Section 13 of the New CBA. Section 13(D) provides that:

> Seniority shall govern all pilots in case of promotion, demotion, their retention in case of reduction of force, their recall from furlough, their assignment or reassignment due to expansion or reduction in force or schedules, and their choice of vacancies . . . . This paragraph shall apply, *provided that certain other rules in this Agreement stipulating specific methods and procedures of applying system seniority shall govern such application of system seniority* only to the extent of the specific provisions of such rules.

New CBA, Section 13(D) (emphasis added). Thus, the New CBA clearly contemplates circumstances in which system seniority will be applied differently from the methods outlined in Section 13. The Defendants assert, and this Court agrees, that LOA 12-05 is one such provision in the New CBA that sets out "specific methods and procedures of applying system seniority."

Under LOA 12-05, which has the same effective date as the New CBA, "[t]he Company and [the] APA agree[d] that the TWA Pilots' existing seniority placements on the Pilots' System Seniority List are final and shall continue pursuant to Section 13 of the CBA notwithstanding the termination of Supplement CC . . . ." *Id.* By including LOA 12-05, therefore, the New CBA explicitly provides that the Plaintiffs are to have the same placement on the System Seniority List as existed under the Old CBA.

The Plaintiffs dismiss LOA 12-05 as a "red herring." They argue that because the Court granted American authorization to reject the Old CBA effective September 5, 2012, *see In re AMR Corp.*, 2012 WL 3834798 (Bankr. S.D.N.Y. Sept. 5, 2012), the pilots had no seniority

8

rights until the new seniority list was in place. *See* Opp. to APA MTD at 7 (ECF No. 15). The Plaintiffs state that "[t]he pilots' seniority rights, as reflected by the 'Pilots' System Seniority List' referred to in LOA 12-05 were only established when the New CBA was entered into on January 1, 2013." *Id.*

But the Plaintiffs' argument misses the point. LOA 12-05 is expressly part of the New CBA. *See* New CBA, Section 1(B)(2) (defining "Agreement" as "this collective bargaining agreement between the [Allied Pilots] Association and the Company *and all supplements and letters of agreement* between the [Allied Pilots] Association and the Company.") (emphasis added); New CBA, Section 26(A) (providing that amendments of the New CBA are "deemed to be incorporated in and . . . become a part of" the New CBA). As part of the New CBA, LOA 12-05 cannot be read to breach the very agreement of which it is a part. The letter memorializes the agreement of American and the APA to alter the general seniority provisions of the New CBA as they apply to the former TWA pilots. The Plaintiffs' argument would render LOA 12-05 superfluous. Indeed, whether or not the pilots had seniority rights during the period between abrogation of the Old CBA and the effective date of the New CBA is irrelevant to the breach of contract claim, which rests upon the seniority rights that Plaintiffs have under the New CBA.[6] Those seniority rights are squarely addressed by the language of LOA 12-05, which is undisputedly part of the New CBA.

Even without considering LOA 12-05, the Plaintiffs' contract claim would still fail given default language in the New CBA about how seniority is determined. As the Plaintiffs correctly

---

[6] American and the APA dispute the Plaintiffs' argument that during the abrogation period, the pilots had no seniority rights. Both argue that American never sought to abrogate the pilot seniority list or seniority provisions in Section 13 of the Old CBA and the Court therefore never authorized such action. While the Court need not reach this issue, it notes that American in fact continued to use the preexisting pilot seniority positions throughout the abrogation period. *See* November 10, 2012, Letter from L. Einspanier to N. Roghair, attached as Exhibit 2 to Declaration of Keith Wilson, *Krakowski I*, ECF No. 36-3 at 48–50.

9

note, a pilot's placement on the System Seniority List is controlled by the "Occupational Date" assigned to the pilot by American. The "Occupational Date" is discussed in Section 2(AA), which states that "[o]ccupational seniority is used for determining placement on the Pilot System Seniority list and for bidding purposes" and that "[a]ny references to seniority in this Agreement are to Occupational Seniority, unless otherwise specified." New CBA, Section 2(AA). That same section goes on to define a pilot's Occupational Date, as the pilot's time with "the Company":

> [g]enerally occupational seniority shall begin to accrue from the date a pilot is first scheduled to complete initial new hire training *with the Company* and shall continue to accrue during such period of duty except as provided in Sections 11 and 12 of this Agreement.

New CBA, Section 2(AA) (emphasis added). The "Company" is defined in the New CBA as American Airlines, Inc. *See* New CBA at Section 1(8); *see also* New CBA at 1 (preamble defining American Airlines, Inc. as the "Company"). Thus, the plain language of the New CBA ties seniority to a pilot's time at American.

The Plaintiffs argue that Section 2(AA) is inapplicable to them since they were experienced pilots at the time they joined American and therefore had no need to participate in "initial new hire training." The Plaintiffs ask the Court to take judicial notice of this fact based on the record regarding American's acquisition of TWA in these proceedings. But the Plaintiffs cite to nothing that supports this interpretation. *See* Plaintiffs' Opp. to APA MTD at 5 n.4.[7] In any event, the Court rejects the Plaintiffs reading as contrary to the language in the agreement.

---

[7]   The Plaintiffs have pointed to nothing to support their contention that even a seasoned pilot hired by American would simply be put in the pilot's seat on his or her first day on the job, without going through any training in or testing on American's practices, rules and regulations. Such a matter is not an appropriate subject for judicial notice. *See* Federal Rule of Evidence 201(c)(2) ("The court . . . must take judicial notice if a party requests it *and the court is supplied with the necessary information*.") (emphasis added); *Guzman-Ruiz v. Hernandez-Colon*, 406 F.3d 31, 36 (1st Cir. 2005) (refusing to take judicial notice where, among other things, "plaintiffs made no attempt to specify what 'adjudicable facts' met the requirements of Federal Rule of Evidence 201.").

10

The Plaintiffs allege that American's general practice—since the acquisition of TWA and continuing through to the present—has been to construe a pilot's Occupational Date as the pilot's "Date of Hire" at TWA plus a time period of between 45 to 49 days thereafter. Compl. ¶¶ 20, 22. But the Plaintiffs' interpretation flies in the face of the New CBA's explicit language. The New CBA clearly defines a pilot's "Date of Hire" as "[t]he first day *as an AA pilot*." New CBA, Section 2(L) (emphasis added). The language of the New CBA makes no reference whatsoever to service with any other employer, including TWA. Thus, the explicit language of both Section 2(AA) and Section 2(L) explicitly tie a pilot's seniority only to his or her employment *with American*. This is consistent with language elsewhere in the New CBA. For example, Section 13(A) provides that "seniority as a pilot shall be based upon the length of service as a flight deck operating crew member *with the Company* . . . ." New CBA, Section 13(A) (emphasis added); *see also* New CBA, Section 2(MM) (defining "Service" as "the period of time assigned to active duty as a flight deck operating crewmember or supervisor *with the Company*.") (emphasis added).

Moreover, the Plaintiffs' reliance on alleged general practices fails as a matter of law. It is true that "collective-bargaining agreements may include implied, as well as express, terms. . . . Furthermore, it is well established that the parties' practice, usage and custom is of significance in interpreting their agreement." *Conrail v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 311 (1989) (internal citations and quotations omitted). But the Plaintiffs here advocate using such alleged practices to negate the express and unambiguous language of the New CBA and LOA 12-05.[8] This is contrary to well-established law for interpreting labor agreements, where

---

[8] The Plaintiffs also note that as a result of the Section 1113 proceedings in American's bankruptcy case, "the Old CBA and its supplements (including Supplement CC) were null and void as of September 5, 2012." To the extent that the Plaintiffs rely on prior practices that existed under the Old CBA, these arguably would be irrelevant

11

"traditional rules of contractual interpretation are applied so long as their application is consistent with federal labor policies." *NYS v. UPS*, 198 F. Supp. 2d 188, 196 (N.D.N.Y. 2002) (quoting *Int'l Org. of Masters, Mates & Pilots v. Victory Carriers, Inc.*, 1985 U.S. Dist. LEXIS 20563, at *6 (S.D.N.Y. Apr. 19, 1985)). "Thus, if the agreement is unambiguous, the court is not free to consider the practice, usage and custom applicable to such agreements."[9] *UPS*, 198 F. Supp. 2d at 196–97 (citing *Victory Carriers*, 1985 U.S. Dist. LEXIS at *7–8 ("The Union argues that the language of the duration clause should be construed in light of industrial practice, usage and custom pertaining to all such agreements . . . However if the language of the contract is unambiguous the court is not free to look to such factors and summary judgment is appropriate."); *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)).[10]

---

when that CBA was abrogated and subsequently replaced by the specific seniority language in the New CBA, which includes LOA 12-05.

[9]  The Plaintiffs' argument regarding American's alleged practices also appears to be inconsistent with the Plaintiffs' litigation position. Specifically, the Plaintiffs state that they were not properly credited for their TWA seniority under Supplement CC and the TWA pilots' integration into American's seniority list. *See* Compl. ¶¶ 11-12. Thus, the Plaintiffs sue here to seek seniority rights consistent with their date of hire at TWA, a system which would give them better seniority than they currently possess. It is hard to see why the Plaintiffs would seek such relief if, in fact, American already provided the Plaintiffs with seniority consistent with their date of hire at TWA.

[10]  Putting aside the merits of the contract claim, there are serious questions about the Plaintiffs' ability to pursue this claim in federal court in the first instance. The Railway Labor Act, 45 U.S.C. § 151, *et seq.* imposes a system of arbitration before the Board of Adjustment for minor disputes, which are disputes that involve the interpretation or application of collective bargaining agreements. *See* 45 U.S.C. §§ 184, 153 First (i); *Addington v. US Airline Pilots Ass'n*, 588 F. Supp. 2d 1051, 1063 (D. Ariz. 2008). The Board of Adjustment provides the exclusive remedy in minor disputes. *See Addington*, 588 F. Supp. 2d at 103 (citing *Consol. Rail Corp. v. Railway Labor Execs. Ass'n*, 491 U.S. 299, 310 (1989)). When arbitration is mandatory, an employee must at least attempt to exhaust the contractual and administrative remedies before seeking judicial review of his claim. *Atkins v. Louisville & N.R. Co.*, 819, F.2d 644, 649 (6th Cir. 1987) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)). This requirement may be excused only if exhaustion would be futile. *See id.*; *see also Addington*, 588 F. Supp. 2d at 1063. The Plaintiffs here concede that their breach of contract claim is a minor dispute but invoke the futility exception, claiming that arbitration by a four or five member board would be "rigged" with two representatives selected by American and two by the APA. Compl. ¶ 45. But the fact that a board is composed of union and company representatives does not by itself render exhaustion futile as a matter of law. *Addington*, 588 F. Supp. 2d at 1063–64 (citing *United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Employment Relations Bd.*, 727 F.2d 1475, 1478–80 (9th Cir. 1984) (en banc); *Haney v. Chesapeake & Ohio R.R.*, 498 F.2d 987, 992 (D.C. Cir. 1974)). Nor does the use of a single neutral arbitrator such as Richard Bloch. *See Addington*, 588 F. Supp. 2d at 1064. Indeed, the fact that the board is likely to rule against the plaintiff on the merits does not necessarily make the process futile. *See id.* (citing *Everett v. USAir Grp.*, 927 F. Supp. 478, 485 (D. D.C. 1996), *aff'd*, 194 F.3d 173

### B. **Plaintiffs' Second Claim Fails to the Extent it is a Hybrid Claim**

In Count II of the Complaint, the Plaintiffs challenge their existing seniority by claiming that it is a result of the APA's breach of its duty of fair representation to former TWA pilots now at American. Plaintiffs claim the APA breached its duty to them by:

> (A) Agreeing to a System Seniority List which violates the terms of the New CBA, to the severe detriment of its former TWA members;
>
> (B) Agreeing to a System Seniority List that mirrors the prior list created under Supplement CC and acknowledged by the APA in 2001 to be unfair to the former TWA pilots; and
>
> (C) Agreeing to a System Seniority List that treats the former TWA pilots differently (and worse) than the pilots of other airlines acquired by American.

Compl. ¶ 49.

A labor union's duty of fair representation has three distinct aspects: "the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). The duty of fair representation applies to all union activity, including contract negotiation. *Air Line Pilots Ass'n v. O'Neil*, 499 U.S. 65, 67 (1991).

A union's duty of fair representation extends to the negotiation of seniority rights for union members. "In general, a union owes a duty of fair representation to all members of the bargaining unit in negotiating an integrated seniority list." *Bernard v. Air Line Pilots Ass'n Intern., AFL-CIO*, 873 F.2d 213, 216 (9th Cir. 1989) (citing *Humphrey v. Moore*, 375 U.S. 335

---

(D.C. Cir.); *Atkins*, 819 F.2d at 649–50 (6th Cir. 1987)). But despite the Court's concerns about this issue, the Court does not need to rule on the question of futility given its conclusion that Plaintiffs have not stated a claim for breach of contract.

(1964)). "While a union may make seniority decisions within a wide range of reasonableness in serving the interests of the unit it represents, such decisions may not be made solely for the benefit of a stronger, more politically favored group over a minority group." *Barton Brands Ltd. v. NLRB*, 529 F.2d 793, 798–99 (7th Cir. 1976). "An essential element, then, necessary to raise a limitation upon a union's discretion in bargaining with respect to seniority rights is a bad faith motive, an intent to hostilely discriminate against a portion of the union's membership." *Hardcastle v. Western Greyhound Lines*, 303 F.2d 182, 185 (9th Cir. 1962).

To state a breach of duty claim, the plaintiff must plausibly allege that the union's wrongful conduct caused his injury. *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citations omitted). In other words, a plaintiff must demonstrate that he actually suffered an injury as a result of the union's alleged misconduct. *Sim v. New York Mailers' Union Number 6*, 166 F.3d 465, 472 (2d Cir. 1999) ("[I]n addition to proving that the Union acted arbitrarily and in bad faith, plaintiffs must demonstrate that any alleged misconduct had an effect on the outcome . . . ."); *see Phillips v. Lenox Hill Hosp.*, 673 F. Supp. 1207, 1214 (S.D.N.Y. 1987) (failing to take action that imposed no prejudice on plaintiff does not satisfy the causation test).

"Although formally comprised of two separate causes of action, a suit in which an employee alleges that an employer has breached a [collective bargaining agreement] and that a union has breached its duty of fair representation by failing to enforce the [collective bargaining agreement] is known as a 'hybrid . . . claim.'" *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983)). To establish a hybrid claim, therefore, a plaintiff is required to prove both "(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair

14

representation vis-à-vis the union members. The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." *White v. White Rose Food*, 237 F.3d 174, 178–79 (2d Cir. 2001). Given the Court's conclusions regarding the breach of contract claim against American, the Plaintiffs' "hybrid" claim in paragraph 49(A) of the Complaint must also fail. *See Acosta*, 410 F. Supp. 2d at 309 ("[I]n a hybrid claim, if the employer is not liable to the employee, neither is the union.") (citing *DelCostello*, 462 U.S. at 165); *see also Herr v. Cineplex Odeon Corp.*, 1994 U.S. Dist. LEXIS 2539, at *12 (S.D.N.Y. Mar. 4, 1994).

This does not, however, dispose of the Plaintiffs' remaining two theories of liability for breach of the duty of fair representation against the APA in paragraphs 49(B) and (C) of the Complaint. The Plaintiffs there claim that the APA breached its duty of fair representation in (1) agreeing to a seniority list that mirrored the list under Supplement CC, and (2) agreeing to a seniority list that treats the former TWA pilots differently from others. These claims are not based on an alleged breach of the New CBA. Rather, the premise of these claims is that the seniority agreed to by the APA is unfair to the former TWA pilots. *See* Compl. ¶¶ 10–13, 43–46. While not expressly set forth in the Complaint, it appears that the Plaintiffs argue that the APA should not have agreed to use the old seniority list for former TWA pilots once the Old CBA was abrogated because the old seniority list was unfair once the corresponding job protections in Supplement CC had been eliminated. *See* Compl. ¶ 17 (all pilots at-will employees once Old CBA terminated). Drawing all reasonable inferences in favor of the Plaintiffs, therefore, the Court finds that the two remaining claims under Count II are distinct from the contract claim and survive independently.

The APA's only theory for dismissal of these two claims relies upon arguments made in a related case brought by the same Plaintiffs, *Krakowski v. American Airlines, Inc., et al.*, Adv.

15

Proceeding No. 13-01283 ("*Krakowski I*"). *See* APA MTD at 14–15. The APA argues without elaboration that the Plaintiffs' claims are precluded for the same reasons they seek dismissal of the complaint in *Krakowski I*. *See Krakowski I* APA MTD and Reply [Adv. No. 13-01283, ECF Nos. 14-1, 25]. But while similar, the facts and arguments in *Krakowski I* are distinct from those in this case. *Krakowski I* focuses on two things: (1) the arbitration regarding the substitute job protections that should be given to former TWA pilots to replace those lost when Supplement CC was terminated; and (2) the agreement between the APA and American that the arbitrator's remedy in that proceeding could not include any change in the seniority of these former TWA pilots. The Complaint in this case cites neither of these events. Indeed, it appears to be carefully crafted to avoid any mention of either, even though the events in the two cases are obviously related. In any event, *Krakowski I* is distinct from the Plaintiffs' claim here that the APA violated its duty by agreeing to use the old seniority list immediately after the Old CBA was abrogated even though the job protections of Supplement CC were gone.[11]

### C. **Plaintiff's Third Count of the Complaint Fails to the Extent that it Relies Upon Breach of Contract**

In Count III of the Complaint, the Plaintiffs allege that the "APA's agreement with American to implement a System Seniority List—*one which does not follow the formula described in the New CBA*, to the detriment of the former TWA Pilot [sic]—is discriminatory and arbitrary on its face." Compl. ¶ 52 (emphasis added). The Plaintiffs also state that "American colluded with [the] APA in its breach of its duty of representation in order to secure

---

[11] The Court notes that the Defendants have disputed the merits of these additional allegations against the APA. *See Rakestraw v. Ari Line Pilots Ass'n*, 981 F.2d 1524, 1536 (7th Cir. 1992) ("Employers are free to prefer one group of employees over another. . . ."); *Krakowski v. American Airlines, Inc. (In re AMR Corp.)*, 2014 Bankr. LEXIS 2610, at *14 (Bankr. S.D.N.Y. June 3, 2014) ("[S]eniority is a zero sum game . . . if someone's bumped up, someone else goes down."). It is premature, however, for the Court to rule on those issues where there is not an adequate factual record or briefing.

[the] APA's approval of the new CBA." Compl. ¶ 53. The Court has already ruled that the implementation of the System Seniority List does not constitute a breach of the New CBA. Therefore, to the extent that Count III relies upon this premise, it is dismissed for the reasons set forth above.

The Plaintiffs' remaining allegations with respect to Count III are insufficient to establish a claim. These allegations are the Plaintiffs' conclusory statements that American colluded with the APA in its breach of representation to secure the APA's approval of the New CBA, Compl. ¶ 53, and that American and the APA entered into a facially discriminatory and arbitrary agreement and colluded with one another, Compl. ¶ 54. It is true that when deciding a motion to dismiss, a court must proceed "on the assumption that all the allegations in the complaint are true," *Twombly*, 550 U.S. at 555, and must draw all reasonable inferences in favor of the non-moving party. *Ganino,* 228 F.3d at 161. But "[t]he same deference does not extend, however, to pleaded legal conclusions." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 678).

Citing *Steffens v. Brotherhood of Ry., Airline and S.S. Clerks, Freight Handlers, Exp. & Station Employees*, 797 F.2d 442, 445 (7th Cir. 1986), the Plaintiffs allege that the pleading burden in these circumstances is not high. But in *Steffens*, the court stated that "[t]he complaint alleges facts which, if true, would support a finding that the union had breached its duty of fair representation and that the union and employer had colluded to deprive plaintiffs of their rights under the collective bargaining agreement. . . . This is enough to state a claim for a hybrid duty of fair representation suit." *Id.* But the Plaintiffs do not do this here. The Complaint simply makes statements amounting to the legal conclusion that American colluded with the APA to gain the APA's approval of the New CBA and that the Defendants "entered into a facially

17

discriminatory and arbitrary agreement." These legal conclusions are not supported or tied to facts in the Complaint. So "[w]hile an employer may be jointly and severally liable for a unions' breach of its fiduciary obligations to its members, such liability can only exist where the facts permit a rational inference that the employer has colluded with, and participated in the union's breach." *Kozera v. Int'l Broth. of Elec. Workers AFL-CIO*, 892 F. Supp. 536, 545 (S.D.N.Y. 1995); *see Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1146 (2d Cir. 1994). The Plaintiffs are free to make such allegations in an amended complaint. *See Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) ("[A] court granting a 12(b)(6) motion should consider a dismissal without prejudice when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal citations and quotations omitted).

**CONCLUSION**

      For the reasons stated above, the Court grants the Defendants' Motions in part and dismisses Count I of the Complaint. The Court also dismisses the hybrid claim contained in Count II of the complaint to the extent such claim is based upon an alleged breach of the New CBA. Finally, the Court dismisses Count III of the Complaint. The Defendants should settle an order on three days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon counsel to the Plaintiffs.

Dated: New York, New York
       September 22, 2015

                              */s/ Sean H. Lane*
                              UNITED STATES BANKRUPTCY JUDGE