| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **<u>FOR PUBLICATION</u>** |

------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| AMR CORPORATION, *et al.*, | Case No. 11-15463 (SHL) |
| Reorganized Debtors. | (Confirmed) |

------------------------------------------------------------------x

| | |
|---|---|
| JOHN KRAKOWSKI, KEVIN HORNER and<br>M. ALICIA SIKES, individually and on behalf of<br>those similarly situated, | |
| Plaintiffs, | |
| v. | Adv. No. 14-01920 (SHL) |
| AMERICAN AIRLINES, INC., *et al.*, | |
| Defendants. | |

------------------------------------------------------------------x

## <u>MEMORANDUM OF DECISION</u>

**A P P E A R A N C E S:**

**JACOBSON PRESS & FIELDS P.C.**
*Counsel for Plaintiffs*
168 North Meramec Avenue, Suite 150
Clayton, Missouri 63105
By:    Allen P. Press, Esq.

**O'MELVENY & MYERS LLP**
*Counsel for Defendant American Airlines, Inc.*
Times Square Tower
7 Times Square
New York, New York 10036
By:    Mark W. Robertson, Esq.
        Sloane Ackerman, Esq.

-and-

400 South Hope Street
Los Angeles, California 90071
By:    Robert A. Siegel, Esq.

**JAMES & HOFFMAN, P.C.**
*Counsel for Defendant Allied Pilots Association*
1130 Connecticut Avenue, NW, Suite 950
Washington, DC 20036
By:    Edgar N. James, Esq.
         Steven K. Hoffman, Esq.
         Darin M. Dalmat, Esq.
         Daniel M. Rosenthal, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the Defendants' motions to dismiss [ECF Nos. 40, 41][1] the second amended complaint (the "Second Amended Complaint") [ECF No. 33] that was filed by Plaintiffs John Krakowski, Kevin Horner, and M. Alicia Sikes on behalf of themselves and all persons similarly situated against Defendants American Airlines, Inc. ("American") and the Allied Pilots Association (the "APA"), which is the pilots' union at American. The Plaintiffs are former Trans World Airlines ("TWA") pilots now employed by American. For the reasons set forth below, the Court grants the Defendants' motions to dismiss.

## BACKGROUND

The factual background of this case is set forth in the Court's most recent decision in this case, familiarity with which is assumed. *See Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 538 B.R. 213 (Bankr. S.D.N.Y. 2015) (the "September 2015 Decision"). The parties and events involved have been the subject of extensive litigation before this Court in several cases, resulting in numerous other written decisions. *See Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 536 B.R. 360 (Bankr. S.D.N.Y. 2015); *Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 2015 WL 2414750 (Bankr. S.D.N.Y. May 19, 2015); *Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*,

---

[1]    Unless otherwise specified, references to the Case Management/Electronic Case Filing ("ECF") docket are to this adversary proceeding.

2014 WL 2508729 (Bankr. S.D.N.Y. June 3, 2014). The Court takes judicial notice of these decisions, as they provide much needed context for the motions now before the Court.[2]

In April 2001, American acquired the assets of TWA. Second Amended Compl. ¶ 16. Shortly thereafter, American and the APA executed Supplement CC, which modified the pilot seniority list at American to include the former TWA pilots, while it stripped them of much of their existing seniority at TWA. *Id*. ¶¶ 17-19. Under Supplement CC, roughly half of these former TWA pilots were placed at the bottom of American's seniority list, while others were integrated into the list but retained only a fraction of the seniority that they held at TWA. *Id*. ¶¶ 18-19.

To compensate for this loss of seniority, Supplement CC created a "protective fence" in TWA's former hub at St. Louis. *Id*. ¶ 20. The protective fence set aside a minimum number of Captain and First Officer positions in St. Louis for which these former "legacy" TWA pilots were given preferential bidding. *Id*. "Thus, while reducing the seniority of legacy TWA pilots put them at a relative disadvantage for purposes of bidding against a much larger number of American pilots for positions on other routes, the protective fence guaranteed a certain number

---

[2] Judicial notice is appropriate even though the parties' litigation spans several different adversary proceedings in this bankruptcy. *See In re E.R. Fegert, Inc.*, 887 F.2d 955, 957-58 (9th Cir. 1989) ("Whether these facts were supported by the record in this adversary proceeding is unclear; however, all of the facts are supported by the record of the underlying bankruptcy matter. . . . 'The record in an adversary proceeding in bankruptcy presumes and in large measure relies upon the file in the underlying case. . . .'") (quoting *Berge v. Sweet (In re Berge)*, 37 B.R. 705, 708 (W.D. Wis. 1983)); *Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014) ("The Court may . . . rely on matters of public record, such as judicial documents and official court records, in deciding whether to dismiss a complaint."); *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 96 n.17 (S.D.N.Y. 2004) ("The Court can take judicial notice of matters of public record. . . including filings in related lawsuits. . . ."); *Messer v. Wei Chu (In re Gao)*, 560 B.R. 50, 55 & n.4 (Bankr. E.D.N.Y. 2016) (taking judicial notice of relevant documents filed in debtor's bankruptcy case and related adversary proceedings) (citing cases); *Citizens Bank v. Leach (In re Leach)*, 35 B.R. 100, 101-02 & n.5 (Bankr. W.D. Ky. 1983) (use of "entire file" is consistent with the Federal Rules of Evidence given connections between a "case" and a "proceeding") (citing *Leather Comfort Corp. v. Chem. Sales and Serv. Co. (In re Saco Local Dev. Corp.)*, 30 B.R. 862, 865 (Bankr. D. Me. 1983) ("[B]ankruptcy judges would be remiss" if they did not take judicial notice of the debtor's bankruptcy case as a whole, including documents filed in the case because of bankruptcy's unique interrelated multi-party nature and a duty to "notice . . . records and files in [the] cause . . . .")).

of desired positions on routes from St. Louis with bidding advantages for legacy TWA pilots." *Krakowski*, 2015 WL 2414750, at *1; *see also* Second Amended Compl. ¶ 20.

In November 2011, American filed for Chapter 11 protection. Second Amended Compl. ¶ 34. American subsequently obtained the Court's permission to abrogate its then-existing collective bargaining agreement (the "Old CBA") with the pilots and their union (the APA) under Section 1113 of the Bankruptcy Code. *Id.* ¶ 36; *see also In re AMR Corp.*, 477 B.R. 384, 454 (Bankr. S.D.N.Y. 2012) (finding that the Debtors established that changes were necessary to the collective bargaining agreement and rejecting many of the APA objections, but denying the Debtors' motion under Section 1113 of the Bankruptcy Code without prejudice because the Debtors failed to show that certain proposed changes were justified by either reference to the Debtors' business plan or the practices of the Debtors' competitors); *In re AMR Corp.*, 478 B.R. 599, 602 (Bankr. S.D.N.Y. 2012) (granting the Debtors' renewed motion under Section 1113 of the Bankruptcy Code). The Old CBA was void as of September 5, 2012. Second Amended Compl. ¶ 37.

American and the APA subsequently negotiated a new collective bargaining agreement for its pilots, which took effect on January 1, 2013 (the "New CBA"). *Id.* ¶¶ 39, 44. At the same time, American and the APA entered into a letter agreement to continue using the same pilot seniority list that had been utilized under the Old CBA ("LOA 12-05"). *See* New CBA at LOA 12-05;[3] Second Amended Compl. ¶ 39. LOA 12-05 provided that "[American] and [the] APA agree that the [legacy] TWA pilots' existing seniority placements on the Pilots' System Seniority List are final and shall continue pursuant to Section 13 of the CBA notwithstanding the

---

[3] The New CBA, including LOA 12-05, is attached as Exhibit 1 to the Plaintiffs' first amended complaint. [ECF No. 1-3].

4

termination of Supplement CC and any preferential flying rights associated with those seniority placements." *See* New CBA at LOA 12-05-1. Under the New CBA, therefore, American and the APA effectively agreed to use the same seniority list that was utilized under the Old CBA and Supplement CC, which meant that the Plaintiffs and other former TWA pilots remained at a lower seniority level than their actual years of service at TWA. Second Amended Compl. ¶¶ 39, 40. But the New CBA did not include the protective fence that had existed under Supplement CC. *Id.* ¶ 39. Instead, "[t]he APA and American agreed to appoint an arbitrator to decide how these [legacy TWA] pilots should be compensated for the loss of the 'protective fence' in St. Louis. But the APA and American also agreed that, when awarding relief, the arbitrator would not be allowed to revisit the issue of these pilots' loss of seniority in 2001." *Krakowski*, 2014 WL 2508729, at *1.

In their first amended complaint (the "First Amended Complaint") [ECF No. 1-9], the Plaintiffs raised a variety of claims based on the treatment of these legacy TWA pilots. Count I of the First Amended Complaint asserted that through the continued use of the seniority list under the Old CBA, American breached the terms of the New CBA. *See* First Amended Compl. ¶¶ 38-40. Count II asserted that by agreeing to use the old seniority list, the APA had breached its duty of fair representation to former TWA pilots now at American. *See id.* ¶¶ 49-50. Count III asserted that American had colluded in the APA's breach of its fiduciary duty. *See id.* ¶¶ 52-53.

In the September 2015 Decision, the Court dismissed Counts I and III in their entirety. *See Krakowski*, 538 B.R. at 225. As to Count I, the Court held that American's use of the old seniority list did not breach the terms of the New CBA. *See id.* at 218-21. On Count III, the Court found the Plaintiffs' conclusory allegations insufficient to state a claim for collusion

5

against American, but ruled that the Plaintiffs could amend their complaint to adequately plead a claim against American for collusion in the APA's alleged breach of its duty of fair representation. *See id.* at 224-25.

As to the remaining claim for breach of the duty of fair representation against the APA, the Court dismissed the portion of Count II that relied upon the breach of contract claim asserted in Count I. *See id.* at 222-23. The Court, however, left open two other theories of liability under Count II. *See id.* at 223-24. These theories alleged that the APA breached its fiduciary duty to the legacy TWA pilots based on two actions:

> Agreeing to a System Seniority List that mirrors the prior list created under Supplement CC and acknowledged by the APA in 2001 to be unfair to the former TWA pilots; and
>
> Agreeing to a System Seniority List that treats the former TWA pilots differently (and worse) than the pilots of other airlines acquired by American.

First Amended Compl. ¶ 49; *see also* Second Amended Compl. ¶ 42.

The Court noted that these claims did not relate to the alleged breach of the New CBA but instead concluded that they could be construed to assert a claim during the discrete period of time after the abrogation of the Old CBA in September 2012 and before the Defendants agreed to enter into the New CBA in December 2012 (the "Post-Abrogation Period"). *Krakowski*, 538 B.R. at 223-24. With respect to these surviving claims, the Court stated,

> [w]hile not expressly set forth in the Complaint, it appears that the Plaintiffs argue that the APA should not have agreed to use the old seniority list for former TWA pilots *once the Old CBA was abrogated* because the old seniority list was unfair once the corresponding job protections in Supplement CC had been eliminated. . . . Drawing all reasonable inferences in favor of the Plaintiffs, therefore, the Court finds that the two remaining claims under Count II are distinct from the contract claim and survive independently.

6

*Id.* at 223 (emphasis added). The Court characterized these surviving claims as the APA having "violated its duty by agreeing to use the old seniority list *immediately after* the Old CBA was abrogated even though the job protections of Supplement CC were gone." *Id.* at 224 (emphasis added).

The Court also distinguished the surviving aspects of Count II from the claims asserted in the related case of *Krakowski v. Am. Airlines, Inc., et al.*, Adv. Proceeding No. 13-01283 ("*Krakowski I*"), which involves the same parties. In *Krakowski I*, the Plaintiffs initially alleged that the APA violated its duty of fair representation by entering into an agreement with American to establish an arbitration process to replace the protections for legacy TWA pilots under Supplement CC, but that restricted the arbitrator from modifying the seniority of the legacy TWA pilots. In the September 2015 Decision, the Court noted that the claims in the First Amended Complaint were distinct from those in *Krakowski I*, which focused on (1) the arbitration regarding the substitute job protections that should be given to former TWA pilots to replace those lost when Supplement CC was terminated; and (2) the agreement between the APA and American that the arbitrator's remedy in that proceeding could not include any change in the seniority of these former TWA pilots. *See Krakowski*, 538 B.R. at 223. The Court noted that the First Amended Complaint cited neither of these events and appeared to be crafted to avoid mention of them. *See id.* at 223-24.

At a subsequent status conference, the Court discussed the scope of its ruling on Count II. In response to a request for clarification on the remaining issues in the case, the Court set forth the surviving claim:

> there's a period when the CBA -- the old CBA was abrogated under 1113 and before there was a new CBA there was a decision made to use the existing seniority lists, and that that use of the seniority lists was a breach of the duty there.

7

> Now, I recognize that that's a very small . . . that's a very discrete statement in the context of many of things that are going on in terms of unions, the airlines, and employees in the aftermath of the 1113, so -- but that's the claim I could see construing the complaint on behalf of the plaintiff that I thought would exist as a duty of fair representation claim.

(Hr'g Tr. 28:24-29:10, Oct. 15, 2015). In a later colloquy, the Court further elaborated:

> Mr. James:   I think I got it. I think we're talking about that period before --
> The Court:   After the 1113 the airline decided to exercise its rights under 1113 --
> Mr. James:   Correct.
> The Court:   -- so the contract ceased to exist before any new contract was agreed upon.
> Mr. James:   Correct. Thank you, Your Honor.
> The Court:   Mr. Press, is that how you understand it? I mean that's --
> Mr. Press:   I think you're correct.

(Hr'g Tr. 30:1-11, Oct. 15, 2015) [ECF No. 50].

On October 20, 2015, the Plaintiffs filed the Second Amended Complaint that is the subject of these motions. Instead of amending their complaint to address the remaining claim under Count II—one for the period after the Old CBA was abrogated and before entry of the New CBA—the Plaintiffs revised the complaint to include a new theory of liability relating to the New CBA. More specifically, the Second Amended Complaint alleges liability based on American offering, and the APA accepting, a new collective bargaining agreement in December 2012 that was free of Supplement CC's protective fences but implemented a seniority list that mirrored the list created by Supplement CC. Second Amended Compl. ¶ 39-40. The Defendants contend that this new theory is, in fact, an old one and must be dismissed given the Court's prior rulings. The Court agrees.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012, provides that a complaint must be dismissed if it fails to state a claim upon which relief can be

8

granted. In analyzing a motion to dismiss under Rule 12(b)(6), a court looks to whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must proceed "on the assumption that all the allegations in the complaint are true." *Id.* at 555. Taken as true, these facts must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2007). "However, this does not mean that a claim must contain 'detailed factual allegations' to survive a Rule 12(b)(6) motion to dismiss." *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, 2012 WL 4474587, at *4 (S.D.N.Y. Sept. 28, 2012) (citing *Talley v. Brentwood Union Free Sch. Dist.,* 2009 WL 1797627, at *4 (E.D.N.Y. June 24, 2009)). Rather, the court must determine "whether the well‐pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (citing *Iqbal,* 556 U.S. at 679). The court must also draw all reasonable inferences in favor of the non-moving party. *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir. 2000).

### A. **Plaintiffs Are Barred From Pursuing Their APA Claims Given the Court's Prior Rulings**

Claims dismissed in a prior court decision are barred by the law of the case doctrine. That doctrine provides that "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." *In re PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991). "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved

9

it by implication." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (internal citations and quotation marks omitted). It "operates to create efficiency, finality, and obedience within the judicial system." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1363 (S.D. Fla. 2005); *see also Liani v. Baker*, 2010 WL 2653392, at *11 (E.D.N.Y. June 28, 2010) ("Law of the case is a doctrine of judicial efficiency that allows a court to avoid time-consuming relitigation of issues already decided. It is not a substantive limit on the power of the court, however, and every court retains the authority to reconsider its prior non-final rulings.") (internal citations and quotations omitted); *McGee v. Dunn*, 940 F. Supp. 2d 93, 100 (S.D.N.Y. 2013) ("The objective of the law of the case doctrine includes promoting efficiency and avoiding endless litigation by allowing each stage of the litigation to build on the last and not afford an opportunity to reargue every previous ruling.") (internal citations and quotations omitted).

Applying the doctrine here, the Court concludes that the claims in the Second Amended Complaint are barred by this Court's prior decisions in *Krakowski I* and in this case.

It is necessary to revisit the procedural background in *Krakowski I* to explain why this is so. In the New CBA, American and the APA settled on a binding arbitration process to replace the job protections lost through the abrogation of Supplement CC, but also agreed to preclude the arbitrator from modifying the legacy TWA pilots' seniority as a possible remedy. *Krakowski*, 2014 WL 2508729, at *2. This arrangement was the basis for the Plaintiffs' claim in *Krakowski I* that the APA had breached its duty of fair representation by agreeing to terminate Supplement CC while precluding the arbitration from altering the seniority of legacy TWA pilots. *Id.* at *4-6. But the Court dismissed the *Krakowski I* complaint in its entirety, ruling that the Plaintiffs failed to show the actions taken by the APA were discriminatory, arbitrary or in bad faith. The Court noted that while the Plaintiffs' claims were rooted in a refusal to improve the seniority of

10

the legacy TWA pilots, the APA's actions did not actually remove the Plaintiffs' seniority, which had been lost over a decade prior through the Old CBA. *Id.* at *4. Instead, the APA agreed to an arbitration process to determine substitute job protections for the protective fence so long as the new protections did not alter seniority. The Court recognized that

> [i]n deciding whether to allow seniority to be reopened . . . the APA necessarily was required to balance the interests of the Plaintiffs and all the other pilots that the APA represent[ed]. . . . Courts have recognized that many decisions made by a union require the union to make distinctions among employees, but that these distinctions do not necessarily constitute discrimination.

*Id.* The Court held that the Plaintiffs had not alleged anything that would allow the Court to conclude that the APA intended to unlawfully discriminate against the legacy TWA pilots or that the APA had made this decision without a legitimate union objective. *Id.* at *4-5. The Court also noted that the Plaintiffs had filed their action before the arbitration was completed and thus were essentially arguing that no possible remedy arising out of the arbitration could ever be sufficient. *Id.* at *5. Accordingly, the Court observed that the actual harm to the Plaintiffs was speculative at that time. *Id.*

The Plaintiffs subsequently supplemented the complaint in *Krakowski I*, again alleging that the APA breached its duty of fair representation. With numerous breaches asserted, the Court divided the Plaintiffs' claims into three general categories: (1) the APA's failure to bargain about the termination of Supplement CC and agreement to terminate Supplement CC without securing equivalent job protections; (2) the APA's agreement to preclude the Supplement CC arbitrators from addressing seniority and the APA's failure to pursue something to "replicate" the Supplement CC job protections; and (3) claims that the Supplement CC arbitration was not procedurally appropriate or fair, including alleged deficiencies in the selection of the arbitrators, the participants, and the lawyers. *Krakowski*, 536 B.R. at 369. The Court dismissed all of the

11

Plaintiffs claims, save for the third set of allegations regarding how the arbitration was conducted. *See id.* at 372-74. In so doing, the Court noted that it had previously rejected the Plaintiffs' position that the only satisfactory remedy in the arbitration required a modification of the seniority for the legacy TWA pilots. *See id.* at 372.

The Court concludes that the Plaintiffs' Second Amended Complaint is simply a thinly veiled attempt to make an end run around the prior rulings in *Krakowski I*. The Plaintiffs' allegations in the Second Amended Complaint again revolve around the failure to change the seniority of the legacy TWA pilots. The Plaintiffs now assert that the APA breached its fiduciary duty by agreeing to preserve the seniority list created by Supplement CC without the protective fences. *See* Second Amended Compl. ¶ 42. But this is essentially the same claim dismissed in *Krakowski I*, where these same Plaintiffs alleged that the APA breached its fiduciary duty by agreeing in the New CBA to terminate Supplement CC and to limit any potential relief from altering the seniority of the legacy TWA pilots. The Court has already ruled on those allegations. Specifically, the Court found that the APA's agreement to preserve the pre-existing seniority list did not in and of itself breach the APA's fiduciary duties, given the existence of the arbitration process to create substitute job protections. In reaching that conclusion, the Court was mindful that Supplement CC was part of the pilots' collective bargaining agreement that was swept away by the Court's grant of Section 1113 relief. *Krakowski*, 2014 WL 2508729, at *4; *see also Krakowski*, 536 B.R. at 369-372. Given the rulings in *Krakowski I*, the Court cannot permit the Plaintiffs to once again pursue essentially the same claims in the current litigation. "Since different adversary proceedings in the same main case do not constitute different 'cases,' it [follows] that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same

case." *Bordeau Bros., Inc. v. Montagne (In re Montagne)*, 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) (citing *Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990) ("Adversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case," for purposes of the law of the case doctrine.)); *Artra Grp., Inc. v. Salomon Bros. Holding Co.*, 1996 WL 637595 at *5 (N.D. Ill. Oct. 31, 1996) (holding law of the case doctrine covers litigation in main case and adversary proceeding); *see, e.g., Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 314, 317 (E.D.N.Y. 2013) (dismissing claims in amended complaint when already alleged in the original complaint and dismissed); *Gardner v. Wansart*, 2006 WL 2742043, at *6 (S.D.N.Y. Sept. 26, 2006) (same).

The Plaintiffs assert their claim in the Second Amended Complaint is distinct from the prior litigation. They argue that "once defendants implemented the result of that arbitration, the TWA pilots were. . . damaged by defendants' agreement at issue in this case to use a seniority list that mirrored the old list, but without Supplement CC's protections." Plaintiffs' Opposition to Defendants' Motions to Dismiss Second Amended Complaint at 10–11 (the "Opposition") [ECF No. 44]. But this argument is just a repackaging of the Plaintiffs' earlier challenge to the Defendants' establishment of an arbitration process that left in place the existing seniority list while seeking a substitute for Supplement CC's job protections. *See Krakowski*, 2014 WL 2508729, at *4-6 (ruling that Plaintiffs failed to state a claim that the APA breached its duty of fair representation by agreeing to terminate Supplement CC and to limit any potential relief in the arbitration from altering the seniority of legacy TWA pilots); *see also Krakowski*, 536 B.R. at 369-72.[4]

---

[4] Of course, the Plaintiffs can challenge the results of the arbitration. They have done so in *Krakowski I* by contesting the putative unfairness in how the arbitration was conducted. *See Krakowski*, 536 B.R. at 372-74; *Krakowski I*, September 22, 2015 Order at 2 [Adv. P. No. 13-01283, ECF No. 80]. Moreover, the Plaintiffs recently filed a new adversary proceeding seeking to vacate the arbitration award based upon one or more of the arbitrators

13

Even putting aside *Krakowski I*, the Second Amended Complaint is also at odds with the guidance provided by the Court in this case about what claims survived dismissal. As the Court made repeatedly clear, the surviving claims covered the Post-Abrogation Period but before the entry of the New CBA. *See Krakowski*, 538 B.R. at 223-24; (Hr'g Tr. 28:25-29:3, Oct. 15, 2015). But the Second Amended Complaint does not allege any conduct by the Defendants during this period. Rather, the Second Amended Complaint focuses on the APA's entry into the New CBA, complaining that it permitted use of the old seniority list without the protections of Supplement CC. *See* Second Amended Compl. ¶¶ 39, 42, 45. The Plaintiffs argue that the Second Amended Complaint should not be limited to the Post-Abrogation Period. *See* Opposition at 3-4, 7-8. They assert that the Court's orders, rulings and remarks did not contain a temporal limitation to the Post-Abrogation Period. But that is incorrect. At the status conference on October 15, 2015, the Court explicitly defined the surviving claims as relating to the period when "the old CBA was abrogated under 1113 and before there was a new CBA." (Hr'g Tr. 28:25-29:1, Oct. 15, 2015). The Court stated that during that period "there was a decision made to use the existing seniority lists and that that use of the seniority lists was a breach of the duty there." (Hr'g Tr. 29:1-3, Oct. 15, 2015); *see U.S. v. Spallone*, 399 F.3d 415, 418 (2d Cir. 2005) (noting a trial court's "inherent authority to interpret ambiguities in its own orders and judgments."). The September 2015 Decision characterized any surviving claims in a similar way:

> While not expressly set forth in the Complaint, it appears that the Plaintiffs argue that the APA should not have agreed to use the old seniority list for former TWA pilots *once the Old CBA was abrogated* because the old seniority list was unfair once the corresponding job protections in Supplement CC had been eliminated. . . . Drawing all reasonable inferences in favor of the Plaintiffs, therefore, the Court

---

allegedly violating the agreement to arbitrate and displaying bias and hostility. *See* Complaint to Vacate Arbitration Award ¶¶ 60-71 [Adv. P. No. 16-01138, ECF No. 1].

> finds that the two remaining claims under Count II are distinct from the contract claim and survive independently.

*Krakowski*, 538 B.R. at 223 (reference to ¶¶ 49(B) and (C) of the First Amended Complaint) (emphasis added).[5] Indeed, the Court distinguished this case from *Krakowski I*, which challenged the New CBA with its agreement to arbitrate. The Court noted that "*Krakowski I* is distinct from the Plaintiffs' claim here that the APA violated its duty by agreeing to use the old seniority list *immediately after the Old CBA was abrogated* even though the job protections of Supplement CC were gone." *Id.* at 224 (emphasis added).[6]

The Court's rulings about the scope of the surviving claims in this case reflected a concern about the duplication of claims and inefficiency in the litigation of these disputes. The Court attempted to clarify—without success—the remaining claims so as to avoid duplication with Plaintiffs' other cases and other claims that have already been dismissed. Indeed, these disputes about the Plaintiffs' seniority have been pending for an extended period of time but are not much closer to reaching conclusion, despite this Court having issued numerous decisions. This is in large part due to the piecemeal and overlapping nature of the litigation in these adversary proceedings, with numerous amendments and new adversary proceedings being filed after each of the decisions issued by this Court. *C.f. Curtis v. Citibank N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000) (noting complex problems that can arise from multiple case filings and

---

[5] The order entered by the Court on dismissal reflected this distinction. *See* Order, dated Oct. 5, 2015 [ECF No. 28] (granting leave to file an amended complaint for the purpose of alleging collusion against American for the only remaining breach of duty claims left in the case, which were found in ¶ 49(B)-(C)).

[6] The Plaintiffs assert that, to the extent the Court meant what it said, the Court should now reconsider its decision. But the Plaintiffs have not filed a motion for this Court to reconsider its decision, and even if such a request were to be made, it would be untimely. *See* Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023; Local Rule 9023-1 (14 day time limit). Moreover, such a motion would need to show clear error, newly discovered evidence, or a change in controlling law, none of which is demonstrated in the Plaintiffs' Opposition. *See In re Residential Capital, LLC*, 537 B.R. 161, 169 (Bankr. S.D.N.Y. 2015) ("Reconsideration is not appropriate unless the movant has demonstrated an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'") (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

discussing rule against duplicative litigation to "foster judicial economy and the comprehensive disposition of litigation" and to "protect parties from the vexation of concurrent litigation over the same subject matter.") (internal citations and quotations omitted); *Kanciper v. Suffolk Cty. SPCA, Inc.*, 722 F.3d 88, 92-93 (2d Cir. 2013) (noting that "plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.") (internal citations and quotations omitted).[7]

### B. Plaintiffs Fail to State a Claim Against American for Collusion

Given the Court's dismissal of the duty of fair representation claims against the APA, the Court must also dismiss the claims of collusion against American. *See United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1283 (7th Cir. 1985) ("If the RLA-based [duty of fair representation] claim against the union is dismissed, the claim against the employer must also be dismissed.") (citing *Graf v. Elgin, Joliet & E. Ry. Co.*, 697 F.2d 771, 781 (7th Cir. 1983)).

Dismissal of the collusion claim is also required because the Second Amended Complaint fails to allege any conduct that could constitute collusion on the part of American in any alleged breach of that duty. The Plaintiffs' allegations of collusion here remain as perfunctory and conclusory as those dismissed in the First Amended Complaint. While "a court must accept as

---

[7]   As an alternative to dismissal, the Defendants request that the Court grant summary judgment on their behalf. More specifically, the Defendants assert that the Plaintiffs are unable to make a claim during the Post-Abrogation period because the job protections of Supplement CC were maintained throughout the Post-Abrogation Period and until substitute terms were constructed by arbitrators and subsequently implemented. *See* November 10, 2012 Letter from L. Einspanier to N. Roghair, attached as Ex. 2 to Decl. of Keith Wilson [Adv. P. No. 13-01283, ECF No. 36-3] ("Until issuance of an arbitration award, the Company will continue to staff the STL Captain positions at the level that would have satisfied the October 2012 Supplement CC report were it still in effect."). The Plaintiffs do not challenge this assertion, and in fact concede that the protections of Supplement CC remained in place throughout the Post-Abrogation Period. *See* Opposition at 7 ("As defendants point out, although American terminated Supplement CC as part of the 1113, it maintained the status quo by keeping its protections in place pending the outcome of the LOA 12-05 interest arbitration."). Given the dismissal of the Second Amended Complaint based on the Court's prior rulings, it is unnecessary to consider the Defendants' alternative request for relief.

16

true all of the allegations contained in a complaint," that is not true for legal conclusions. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As the Supreme Court has counseled, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Plaintiffs have not alleged facts evidencing bad faith, discrimination, or hostility. The Second Amended Complaint instead only contains two broad but related allegations against American: (1) that "American *offered*, and APA accepted, a new collective bargaining agreement free of Supplement CC's protective fences, and which implemented a seniority list that mirrored the admittedly unfair list created by Supplement CC," and (2) that American "implemented the new seniority list on January 1, 2013 *with knowledge that APA had breached its duty of fair representation* to the former TWA pilots. . . ." Second Amended Compl. ¶¶ 39, 44 (emphasis added). Neither allegation is sufficient to state a claim for collusion.

As for the Plaintiffs' first assertion, the mere negotiation of a collective bargaining agreement cannot be the basis of a collusion claim against an employer. "[S]imple 'negotiation between [an] employer and union is not evidence of collusion.'" *Cunningham v. United Airlines, Inc.*, 2014 WL 441610, at *5 (N.D. Ill. Feb. 4, 2014) (quoting *Air Wisc. Pilots Prot. Comm. v. Sanderson*, 124 F.R.D. 615, 617 (N.D. Ill. 1988)); *see also United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1282-83 (7th Cir. 1985) (rejecting "patently fallacious" argument that negotiation of a collective bargaining agreement between a carrier and union "necessarily entails collusion"). As the Plaintiffs have not alleged any conduct by American beyond its negotiation of a new agreement with the APA, this first allegation standing alone does not state a claim.

17

The Plaintiffs' second and related allegation fares no better. The Plaintiffs assert that they have adequately plead knowledge on the part of American of the APA's breach, arguing that case law in the Second Circuit permits employees to add their employer as a defendant merely "by alleging the employer's knowledge of or complicity in the union's breach." Opposition at 11-12 (quoting *Krakowski*, 536 B.R. at 367). But the cases cited by the Plaintiffs apply that standard in a hybrid claim, where a duty of fair representation claim against a union is combined with an allegation that the employer has breached the collective bargaining agreement. *See Long Island City Lodge 2147 v. Ry. Express Agency, Inc.*, 217 F. Supp. 907 (S.D.N.Y. 1963); *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847 (2d Cir. 1961); *N.L.R.B. v. Am. Postal Workers Union*, 618 F.2d 1249 (8th Cir. 1980); *Fruin-Colnon Corp. v. N.L.R.B.*, 571 F.2d 1017 (8th Cir. 1978); *Lummus Co. v. N.L.R.B.*, 339 F.2d 728 (D.C. Cir. 1964); *Am. Postal Workers Union, Local 6885*, 665 F.2d 1096 (D.C. Cir. 1981). As no such breach of contract claim exists here, there is no hybrid claim upon which to anchor a conclusory claim of collusion against American.

Absent such a hybrid claim, a plaintiff seeking to hold an employer liable for collusion in connection with entering a collective bargaining agreement that is alleged to violate a union's duty of fair representation must allege conduct by the employer evidencing bad faith, discrimination, or hostility towards the plaintiffs. *See, e.g., Rakestraw v. United Airlines, Inc.*, 765 F. Supp. 474, 493-94 (N.D. Ill. 1991) (dismissing claim against carrier even though carrier was aware of the animosity between the union and the minority group because there was no evidence that the carrier "acted in bad faith or discriminated against plaintiffs in accepting [the union's] proposal."), *aff'd in relevant part, rev'd in part*, 981 F.2d 1524 (7th Cir. 1992); *Cunningham*, 2014 WL 441610, at *6 (holding that potential knowledge of union discrimination

against its members is not enough to support a finding of collusion by the carrier, absent extreme factual scenarios). No such allegations have been made here. It is not "appropriate to impose liability where the employer is charged with nothing more than having acceded to the demands of the [u]nion, even with knowledge of facts from which it might be inferred that the [u]nion was not fulfilling its duty of fair representation to all of its constituents." *Am. Airlines Flow-Thru Pilots Coalition v. Allied Pilots Ass'n*, 2015 WL 9204282, at *3 (N.D. Cal. Dec. 17, 2015). Doing so would require an employer to supervise the actions of the union counterparty and make an independent evaluation of the conduct and decisions of the union prior to entering a collective bargaining agreement. *See Cunningham*, 2014 WL 441610, at *6. Such a requirement is unworkable, as

> [a] union does not automatically breach the duty of fair representation every time it negotiates for contracts in which some of its members are treated differently than others. At least outside contexts such as discrimination against protected classes, the onus should not be on the employer to evaluate and consider whether distinctions a union draws among its members are appropriate. Thus, something more than merely acceding to union demands must be alleged and proven to impose liability on an employer for 'colluding' in a breach of what ultimately remains the union's duty.

*Am. Airlines Flow-Thru*, 2015 WL 9204282, at *3; *see also Am. Postal Workers Union, Local 6885*, 665 F.2d at 1108-09 ("The [employer] was required only to bargain in good faith with the employees' exclusive representative, and, in so doing, it was expected to represent its own interests, not those of the employees."); *Cunningham*, 2014 WL 441610, at *6 ("'[T]he employer must in most circumstances be able to rely on the union's disposition' in spite of some employee objections; and it would have a 'detrimental effect on labor-management relations' if an employer were 'forced to ignore union representations and take the initiative in dealing with employees whenever it suspects a discriminatory union motive.'") (quoting *Carroll v. Bhd. of R.R. Trainmen*, 417 F.2d 1025, 1028 (1st Cir. 1969) (internal quotation marks omitted)).

19

## **CONCLUSION**

For the reasons stated above, the Court grants the Defendants' motions to dismiss the Second Amended Complaint in its entirety. The Defendants should settle an order on three days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon counsel to the Plaintiffs.

Dated: New York, New York
       April 14, 2017

                                 */s/ Sean H. Lane*
                                 UNITED STATES BANKRUPTCY JUDGE